UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:07cv174

| | | |
|---|---|---|
| HEATHER ZAMPOGNA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| v. | ) | |
| | ) | |
| GASTON COUNTY SCHOOLS | ) | |
| BOARD OF EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on the Defendant Gaston County Schools Board's ("Board") Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Board argues that Plaintiff Heather Zampogna fails to state a claim under Title VII of the Civil Rights Act of 1964 and Section 1983 because she cannot show that the Board took an adverse employment action against her and that she fails to state a claim for Negligent Infliction of Emotional Distress. For the reasons set forth below, the Board's Motion to Dismiss is **DENIED** in part and **GRANTED** in part.

I.

The facts as alleged in the First Amended Complaint and stated in the light most favorable to Zampogna, as the Court is required to do in deciding a Motion to Dismiss, are as follows: on July 28, 1998, Zampogna began working as a third-grade teacher for Gaston County Schools (hereinafter "GCS"). Zampogna was appointed a "Career Teacher" under North Carolina's tenure law in 2001 and was twice selected as "Teacher of the Year" (2000-2001; 2005-2006). Zampogna was also selected by GCS to be a teacher mentor, for which she received

additional compensation from the State. In August 2004, while working at Tryon Elementary School, Principle Terry Usery assigned Zampogna to be a mentor for Douglas Doorley, a newly hired teacher.

Zampogna began to date Doorley in the summer of 2005. GCS does not have any written rules or policies prohibiting teachers from dating. Other teachers in GCS have dated without the objection of Principle Usery. Zampogna was not told that she should not date one of her teacher mentees during her mentor training.

Their relationship became intimate. In November, 2005 Zampogna learned she was pregnant, although she did not have any immediate plans to marry. On January 3, 2006, Zampogna and Doorley met with Usery and informed him of the pregnancy. At that meeting Usery assured Zampogna that she had not done anything wrong or illegal and that there was not an issue with her being Dooley's mentor.

On January 17, 2006, GCS Superintendent Reeves McGlohon summoned Zampogna and Doorley to a meeting with GCS General Counsel Julie Shovlin, Usery, and himself. Shovlin questioned Zampogna and Doorley about whether they had committed any sex acts on school property or whether Dooley was claiming sexual harassment. They responded separately that neither had occurred. McGlohon then asked Zampogna and Doorley whether they intended to get married, indicating that there was a potential immorality issue of pregnancy occurring out of wedlock. He stated that he did not want to advocate or condone unwed pregnant teachers to elementary students in this school and that this was in a "Baptist community." He ended the meeting stating that a decision would be made regarding employment in the next few days.

On January 27, 2006, Zampogna found a note from Usery stating that they needed to speak. Zampogna repeatedly attempted to meet with Usery with no success. On February 6,

2006, while Zampogna was at a doctor's appointment, a fellow teacher called her to tell her that Usery was introducing a new teacher to the staff as Zampogna's replacement. Zampogna immediately called Usery about her job status. Usery told her that GCS was allowing her to be transferred from Tryon to a tutor position working with at risk children at Rhyne Elementary. He told her she would be working with third to fifth graders and asked her to "leave quietly."[1]

Usery asked Zampogna to disseminate a letter from him to the students' parents concerning the circumstances of her departure. (See Complaint Exhibit D). Zampogna believed the letter contained false statements regarding the circumstances of her departure so she refused to hand out of the letter. Usery also sent out an email to all Tryon teachers indicating that Zampogna was taking on a "lead teacher" position at Rhyne. (See Complaint Exhibit E).

Zampogna claims she was "effectively demoted" to a fifth-grade tutoring position at Rhyne even though GCS did not decrease her salary. She also claims that this demotion changed her job status because Rhyne is the lowest performing of the 31 GCS elementary schools. As a result of the transfer, Zampogna claims that she underwent intense physical and emotional stress that caused her to experience complications with her pregnancy and periods of bed rest. Zampogna sought professional counseling and was prescribed medication.

On March 19, 2007, Zampogna filed a complaint in the North Carolina Superior Court. On April 20, 2007, the Board filed a notice of removal to this Court. On August 31, 2007, Zampogna filed an Amended Complaint alleging violation of Title VII and Negligent Infliction of Emotional Distress. The Board filed a Motion to Dismiss on September 20, 2007.

II.

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. A complaint

---

[1] Doorley was neither transferred nor demoted.

should not be dismissed when it meets the notice pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure, which are satisfied when "the complaint sufficiently alleges each element of the cause of action so as to inform the opposing party of the claim and its general basis." Chao v. Rivendell Woods, Inc., 415 F.3d 342, 348 (4th Cir. 2005). In considering a motion to dismiss, the Court will regard all the factual allegations of the complaint as true and construe all the factual inferences in the plaintiff's favor. Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 218 (4th Cir. 1994). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 1969. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Id. at 1974.

III.

The Board has moved to dismiss Zampogna's claim of sex and pregnancy discrimination under Title VII and Section 1983 on the ground that she has failed to allege facts sufficient to show that the Board took an adverse employment action against her. Title VII renders it unlawful for an employer

> to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex, . . . or to limit, segregate, or classify his employees . . . in any way which would deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex.

42 U.S.C. § 2000e-2(a). An adverse employment action is a discriminatory act which "adversely affects the terms, conditions, or benefits of the plaintiff's employment." Von Guten v. Maryland, 243 F.3d 858, 865 (4th Cir. 2001) (internal quotation marks omitted). A reassignment can "form

the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect." Boone v. Goldin, 178 F.3d 253, 256 (4th Cir. 1999).

The Board asserts that Zampogna's job reassignment does not constitute an adverse employment action because Zampogna has not shown any significant change in job classification or salary. Zampogna did not experience any decrease in pay as a result of her reassignment and was still paid for being a mentor to Doorley. The Board also contends that the stress Zampogna complains of does not constitute an adverse employment action because all reassignments come with some amount of stress.

In contrast, Zampogna complains of a "significant change in employment status" and "a reassignment with significantly different responsibilities" as a result of her gender and pregnancy. Taking the facts of the complaint as true, she complains that she was "effectively demoted" from a lead teacher of third graders to a tutor of fifth graders. She argues that the demotion in and of itself was an adverse employment action.

Additionally, Zampogna argues that her reassignment was adverse because it changed her employment status. She asserts that the tutor position is much less prestigious than a teacher position and does not require the same qualifications. Her reassignment forced her to withdraw her application for National Board for Professional Teacher Standards certification because she was no longer a lead classroom teacher. The certification would have entitled her to additional salary and thus she argues the reassignment adversely affected her ability to receive prospective additional compensation. She further contends that her employment status was affected by the fact that she was transferred to the worst performing school in the district.

Zampogna also asserts that her job responsibilities significantly changed with the reassignment constituting an adverse employment action. She was unfamiliar with fifth grade

subject matter, which required her to spend additional work hours, often at home, to prepare for tutoring.  Unlike her job as a lead teacher, Zampogna no longer developed the curriculum for the school year, no longer issued final quarterly grades, was not responsible for readying the classroom, was not involved in deciding whether her students should advance to the next grade, and was not assigned a teacher assistant.  As a tutor, she simply assisted her students with specific problem areas they experienced in math and reading.  She also had to give up several leadership responsibilities when she was transferred and had no opportunity at Rhyne to get involved in school committees.

Zampogna's work area at Rhyne was located in a trailer, which she shared with three other tutors, and did not have any restroom facilities, running water, or a telephone.  To get to the main building she had to walk outside, across a parking lot, and up a set of stairs.  She complains the location of the trailer caused her physical distress as she had to walk great distances to use the facilities and pick up her students.  As a result of physical stress, Zampogna experienced complications with her pregnancy and went through periods of bed rest.

By alleging facts of a significant change in employment status and a reassignment with significantly different responsibilities, Zampogna has included sufficient facts in her complaint to state a claim for relief that is plausible on its face.  The Court, therefore, denies the Board's motion to dismiss the first and third causes of action.

IV.

The Board has moved to dismiss Zampogna's claim of negligent infliction of emotional distress by arguing that Zampogna has failed to allege the Board breached a legal duty and because discriminatory conduct is not negligent conduct. To state a claim for negligent infliction of emotional distress in North Carolina, a plaintiff must show that (1) the defendant negligently

engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause plaintiff severe emotional distress, and (3) the conduct did in fact cause plaintiff severe emotional distress. Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 395 S.E.2d 85, 97 (N.C. 1990).

Zampogna's complaint recounts only intentional acts by the Board: introducing Zampogna's replacement before notifying Zampogna of her transfer; demoting Zampogna to a tutor position; transferring a pregnant woman to the worst performing school of the district in a high crime area; and misinforming parents about the reasons for Zampogna's departure. A negligent infliction of emotional distress claim must fail where plaintiff alleges discriminatory conduct–as it is inherently intentional, not negligent, conduct. See e.g. Mitchell v. Lydall, Inc., 16 F.3d 410, 1994 WL 38703 at *3 (4th Cir. Feb. 10, 1994) (table) ("Mitchell's complaint contains merely a single, conclusory allegation that Lydall was negligent; the material factual allegations charge nothing but intentional acts by Lydall in failing to accommodate Mitchell's [disability] and in discharging him. . . . [W]e must conclude that they do not state a claim for negligent infliction of emotional distress." (citation omitted)); see also Thomas v. Northern Telecom, Inc., 157 F. Supp. 2d 627, 637 (M.D.N.C. 2000) ("Like the plaintiff in [Mitchell], Plaintiff Thomas's allegations in this case charge nothing but intentional acts by Defendant. Therefore, Plaintiff fails to state a claim for negligent infliction of emotional distress."). Zampogna's conclusory allegations of negligence without alleging facts showing that the Board engaged in anything other than intentional behavior are insufficient to support a claim of negligent infliction of emotional distress. Accordingly, the Court grants the motion to dismiss the second cause of action.

V.

**IT IS, THEREFORE, ORDERED** that the Board's motion to dismiss the first and third

causes of action is **DENIED** and its motion to dismiss the second cause of action is **GRANTED**.

Signed: December 26, 2007

_____
Robert J. Conrad, Jr.
Chief United States District Judge